PAYNE v. THE KANSAS CITY, ST. JOSEPH & COUNCIL BLUFFS RAILWAY COMPANY.

1. **Railroads:** INJURY TO STOCK ON TRACK: SUFFICIENCY OF FENCE: GATE: QUESTION FOR JURY. In an action against defendant for the value of cattle which went from plaintiff's pasture upon defendant's track, through a gate in defendant's fence, and were killed, *held* that it was not negligence, as a matter of law, that the gate was so constructed as to swing toward the track, and that it was fastened with a hook on the side toward the pasture, but that the sufficiency of the gate and of its fastening was a question for the jury; and that their finding, which had at least some support in the evidence, could not be disturbed on appeal.

2. ———: ———: WHAT CONSTITUTES WANT OF FENCE: DOUBLE DAMAGES. Section 1289 of the Code, allowing the recovery of double damages for stock killed by railroads by reason of the want of a fence, applies to cases where the fence is insufficient, as well as where there is no fence, and in this case, *held* that the rule applied to a case where the stock got on the track through a defective gate in defendant's fence.

3. ———: ———: EVIDENCE: MANNER OF HANGING GATE. In such action the defendant was not prejudiced by the testimony of one of plaintiff's witnesses to the effect that there was nothing to prevent the hanging of the gate on the inside of the field, since the court instructed the jury that defendant had the right to hang it on either side.

4. ———: ———: EVIDENCE TO EXPLAIN OPENING OF GATE. It was proper, in such case, to allow plaintiff to show that there were calves on the other side of the right of way belonging to the cows that were killed, as such testimony would tend to show that the gate was opened by the cows.

5. ———: ———: EVIDENCE OF INSUFFICIENCY OF LIKE FASTENINGS. In such case, it was not error to allow testimony tending to show that other like fastenings had proved insufficient in practice, since the court charged the jury that before such evidence could be considered it must appear that the fastenings were not only alike, but that the manner in which they were put on, and in which the gates were hung, was in all respects the same.

6. ————: ————: EVIDENCE OF SUFFICIENCY OF LIKE FASTENINGS. In such case, defendant could not escape liability by showing that the fastening in question was like those in general use, and evidence to that effect was properly excluded, where there was no offer to show, also, that those in general use had been applied to the gates in the same way, and that the gates had been hung in the same way, and that all the material circumstances had been the same, and that they had proved in practice to be sufficient.

7. ————: ————: INSTRUCTIONS AS TO DEFENDANT'S LIABILITY. In such case the court, instructing the jury as to defendant's liability, stated that the main questions were, whether or not the fastenings on the gate were safe and reasonably sufficient for their purpose, and, if not, whether plaintiff's cattle got upon the track, and were injured, by reason of such insufficiency: and whether the fastenings were such, and put on in such a place and in such a way as a man of usual and ordinary prudence would consider safe and sufficient for the purpose in that place. *Held* that these instructions were correct, and that others given in harmony with these were without objection.

*Appeal from Fremont District Court.*

MONDAY, JUNE 27.

ACTION to recover, under section 1289 of the Code, for double the value of certain cows killed by one of the defendant's trains, where it had a right to fence. There was a trial to a jury, and verdict and judgment were rendered for the plaintiff. The defendant appeals.

*Sapp & Pusey*, for appellant.

*T. C. Powers* and *Draper & Thornell*, for appellee.

ADAMS, CH. J.—The defendant's road passed through the plaintiff's pasture, and, while fences had been constructed upon each side, it is maintained by the plaintiff that they were insufficient to turn the plaintiff's stock, and that the animals were killed by reason of a want of a fence, within the meaning of the statute. In the fence in question was a private crossing, where the defendant had erected and was maintaining gates for the plaintiff's accommodation. The plaintiff's cows, which were killed, passed upon the defendant's track through one of the gates. The principal

question of fact is as to whether the gate was properly con-
structed.  If it was not, we think that the jury was justi-
fied in inferring that it came open by reason of its improper
construction, and was justified in finding that the cows were
killed by reason of a want of a fence.

I.   The defendant assigns as error that there was no evi-
dence to support the finding.   Its position is that the undis-
puted evidence respecting the gates shows that it
was sufficient.   The facts respecting the gate
appear to be that it was fastened by a hook on
the pasture side, and was so constructed as to
swing out towards the right of way.   The hook
where it entered the staple was not bent quite at a right angle,
but at an obtuse angle, or else the lower point flared out a
little to facilitate the inserting of it in the staple.

1. RAILROADS:
injury to
stock on
track: suffi-
ciency of
fence : gate:
question for
jury.·

The defendant contends that it had no right to construct·
the gate so as to swing in towards the pasture; that it can-
not be said to be negligence to construct the hook on the
pasture side; and that the form of the hook was the usual
and necessary form.   Upon this point it may be said that the
law does not prescribe the mode of constructing gates, and,
so far as the question before us is concerned, it is not mate-
rial how they are constructed, provided they are sufficient to
turn stock.   We see no good reason why they may not be
constructed so as to open towards the pasture or land designed
to be fenced against, and perhaps, if they are so constructed
as to swing towards the right of way, that may be regarded
as tending to render them less secure.   At the same time we
have no doubt that a secure gate ·might be constructed if
made to swing the other way.   The fact, too, that the hook
was on the inside next to the pasture or land inclosed would
not necessarily show improper construction.   It might, we
presume, be on that side, and the fastening be secure, even
though it were safer, as a rule, to put it where it would not
be exposed to disturbance from the horns of the cattle.   So
the hook might flare out at the point, and yet be turned at a

JUNE TERM, 1887.        217

Payne v. The Kansas City, St. Joseph & Council Bluffs R'y Co.

right angle or acute angle, and have no tendency to unfasten by mere pressure against the gate. It was for the jury to say, in view of all the facts proven, whether the fastening was sufficient. One thing seems to be certain, and that is that the fastening was not sufficient if the gate would open by mere pressure against it, because cattle naturally haunt a gate where they are accustomed to pass out and in, and are liable to crowd each other against it. As to the liability of the gate to fly open by pressure against it, there was considerable evidence. One witness said: "The pressure of a man, very slight, against the gate, would throw the hook out of the staple. I know, because we tried it." Another said: "A pressure against the gate would throw the hook out of the staple." It seems very clear to us that we cannot disturb the verdict for want of support in the evidence.

II. The court instructed the jury, in substance, that, if the plaintiff was entitled to recover anything, he was entitled to recover double the value of the animals killed. The defendant assigns the giving of this instruction as error. It is said that this is not a case where the company failed to fence, and so does not fall under the provision for double damages, as made in section 1289 of the Code. It is true that the fence seems to have been good enough, except the fastenings of the gate, but the gate is a part of the fence; and, if that was insufficient to turn cattle, it appears to us that there was a failure to fence, within the meaning of the statute. It may be, as is suggested, that the fastenings were merely out of repair, but this would make no difference in respect to the rule laid down by the court. It would still be true that the defendant's liability, if it arose at all, arose by reason of a want of a fence, and the provision for double damages would apply. The defendant suggests that there might have been a want of repair of so recent origin that the company was not in fault. If that is so, the company was not liable at all for such want of repair, and the jury was instructed merely that the plaintiff was entitled to double damages, if anything.

*2. ——: ——: what constitutes want of fence: double damages.*

III.   A witness was allowed to testify, against the defendant's objection, that there was nothing, so far as he knew, to prevent hanging the gate on the inside of the field. The admission of this evidence is assigned as error. The court instructed the jury that the defendant had the right to hang the gate on either side. Under this ruling, we cannot think that the defendant was prejudiced by the evidence. It may be said that the admission of the evidence implied that the court thought that it would have been better to hang the gate on the inside, if it could be. To this we think it may be said that it would have been better if the hook had been so constructed that mere pressure from the inside would not cause the hook to fly out, and there was evidence to show that it would.

*3. —: —: evidence: manner of hanging gate.*

IV.   The defendant complains of the admission of evidence tending to show that there were calves on the other side of the right of way, belonging to the cows in question. We think that this evidence was properly admitted. It was a circumstance tending to show that the gate was opened by pressure of the cows against it, and was not, as the defendant claimed, left open by some one.

*4. —: —: evidence to explain opening of gate.*

V.   The defendant complains of the admission of evidence tending to show that other like fastenings had proved insufficient in practice. Under the guarded instruction of the court, we think that there was no error in this. The jury was told that, before such evidence could be considered, it must be shown, not only that the fastenings were alike, but that the manner in which they were put on, and the manner of hanging the gates, were in all respects alike.

*5. —: —: evidence of insufficiency of like fastenings.*

VI.   The defendant offered to show that the fastenings in question were like those in general use, but the court excluded the evidence, and the defendant assigns the exclusion as error. We do not think it was sufficient for the defendant to show that it used fastenings of the kind in general use, and that the one in question was of that kind. The fastening should have been reasonably

*6. —: —: evidence of sufficiency of like fastenings.*

sufficient to answer the purpose intended. If it was not, we do not think that the defendant could escape liability by showing that it was in general use. If there had been an offer to show that the fastenings in general use were not only like this, but had been applied to the gates in the same way, and the gates had been hung in the same way, and all the material circumstances had been alike, and that they had proved in practice to be sufficient, it may be that such evidence would have been admissible; but there was no such offer. The defendant complains of the exclusion of an opinion that the fastening was sufficient, but the question was not one for expert evidence.

VII. The defendant criticises to a considerable extent the instructions which were given. We cannot properly set out all the instructions, nor notice specifically all the criticisms which are made. The criticisms, in a general way, amount to this: that the jury was not properly instructed in regard to the duty which devolved on the defendant in order to enable it to escape liability of the kind in question. We have all read the instructions carefully, and are agreed that the case was fairly submitted under them. The court charged the jury as follows: "The main questions in this case, so far as the liability of the defendant is concerned, are whether or not the fastenings of the gate were safe and reasonably sufficient for the purpose for which they were used; and, if they were insufficient for that purpose, whether or not the cattle of the plaintiff got upon the track of the defendant, and were injured, by reason of such insufficiency." Then, proceeding a little further, the court put this question in its charge: "Were the fastenings on this gate such, and put in such a place, and on in such a way, as a man of usual and ordinary prudence would consider safe and sufficient to be used in the place and for the purpose for which this fastening was used?" These instructions appear to us to cover the ground fairly, and we do not see that the court said anything inconsistent therewith.

We see no error, and the judgment must be AFFIRMED.