COUNTS ET AL., TRUSTEES, APPELLEES, *v.*
THE CHESAPEAKE & OHIO RD. CO. ET AL., APPELLANTS.

(No. 402—Decided January 27, 1950.)

*Mr. J. F. Cutright,* for appellees.
*Mr. John S. Phillips,* for appellants.

METCALF, J. This is an appeal on questions of law from a judgment of the Court of Common Pleas of Ross County, a jury having been waived, in favor of plaintiffs in the sum of $900 and against the defendant The Baltimore & Ohio Southwestern Railroad Company. The material facts are not in dispute. Plaintiffs are the owners of farm land on both sides of a railroad used jointly by the defendant railroad companies, but by stipulation it is agreed that The Baltimore & Ohio Southwestern Railroad Company was the operator of the train herein involved, and for that reason any reference hereinafter to the defendant railroad company applies only to that particular defendant.

The railroad right of way is fenced on both sides, there being a private crossing over the railroad at the point in question with gates on each side opening into plaintiff's fields. For the purpose of this opinion the railroad at this particular crossing will be indicated as running in a general easterly and westerly direction. On October 3, 1946, plaintiffs were pasturing fifteen cows and two heifers, together with their calves,

in a field north of the right of way. On that day the owners removed from this herd twelve calves which were old enough to wean and transported them from the immediate vicinity. The cows and approximately five younger calves were left in this northern field. Immediately adjacent to this northern field is another field on the north thereof separated by a fence and at the time in question connected therewith by an open gate, permitting the cows to have the run of both fields north of the track. The calves were removed about three o'clock in the afternoon and around six o'clock in the evening plaintiffs' farm hand, on his way home from work, noticed that the gate on the north side of the right of way leading into the field where the cows were pasturing did not have sufficient lap on the post opposite the hinged end. The farm hand thereupon procured a piece of baling wire and wired the gate somewhere between its fastening and the bottom. The record discloses that later the same evening, at approximately nine o'clock, these cows came down to the gate on the north side of the right of way, and, as a result of pushing against it, shoved the gate past the tie post causing it to open and permitting the cows to get out upon the right of way where three of them were killed by a passing locomotive of the defendant railroad. Certain facts are not in dispute, such as the average weight of the cows being fourteen or fifteen hundred pounds, their value being approximately $300 each and more specifically it is not in dispute that the value of the three that were killed aggregates $900, for which amount judgment was awarded.

Plaintiffs' action is predicated upon Section 8913, General Code, the pertinent part of which reads:

"A company or person having control or management of a railroad shall construct and maintain in

good repair on each side of such road, along the line of the lands of the company owning or operating it, a fence sufficient to turn stock. * * *"

Defendant concedes that gates come within the above statutory provision under judicial interpretation in Ohio.

While originally defendant set forth several grounds of error, all are abandoned in its brief save and except number two, which defendant claims, and this court agrees, is so closely related to the others that it is all inclusive.

It reads as follows:

"The judgment of the court in finding for the plaintiff-appellee is not sustained by the weight and sufficiency of the evidence and is contrary to the manifest weight of the evidence, and is contrary to law."

It should be stated that defendant's brief sets forth some complaint as to the petition alleging that the gate in question was on the south side of the track whereas the evidence all went to the fact that it was the gate on the north side that came open. This is explained by reason of the right of way through the lands of plaintiffs not having any direct and continuous direction and, therefore, both witnesses and counsel throughout the record refer to northerly, easterly and other directions but the evidence all pertains to the one gate. Defendant's representatives knew from the time the cows were killed which gate was involved, and there is no element of surprise or variance in that regard; in fact none is seriously claimed.

Keeping in mind that there is no dispute as to how the cows got upon the railroad track and, further, that the defense offered no testimony but chose to rest at the completion of the testimony offered by plaintiffs and rely upon its motion "to dismiss this cause because the plaintiffs have failed to show any liability

on the part of the railroad in this loss," a brief analysis of the testimony offered relative to the sufficiency of this gate and its mode of fastening is proper in order to determine whether it was negligently maintained.

The testimony offered by plaintiffs discloses that the gate had only four boards on it and was not high enough for ordinary stock; that the space between the top boards was large enough for a cow to put her head through and push; that there was no stop on the open end of the gate; that the end did not lap over the fence post enough to keep the gate from swinging through and if given a tight push the gate would go through; that it was fastened with a number nine wire and an ordinary staple; that by reason of the gate not having a lap on the fastening post it was necessary for the farm hand of plaintiffs to place additional wire thereon; that the gate did not hit the post to which it was to be fastened and was easily pushed on through with ordinary pressure; and that the gate was made out of three-eighths inch dressed lumber with only four boards whereas the customary gate, under such circumstances, should be built of one-inch lumber with five or six boards thereon.

The section foreman of the defendant railroad company, who testified that it was his duty to see that fences and gates were "kept up," and who was one of two employees of the defendant called to the scene of the accident within a few moments thereafter, stated in his testimony that the gate had been pushed through and was half way open toward the track; that there was no other way for the cows to get through; that the gate was pushed half way in, in the center; and that the gate was made to open the other way but it was bent and opened toward the track.

Thus it will be seen that there is sufficient and ample

evidence to establish the insufficiency of the construction and maintenance of this gate, not only as to its mode of fastening but as to the construction and material used.

The provision that railroad companies shall construct and maintain in good repair fences on each side of its road is a general rather than a specific requirement, and negligence is the basis of liability thereunder. In the second paragraph of the syllabus in the case of *Baltimore & Ohio Rd. Co.* v. *Schultz*, 43 Ohio St., 270, 1 N. E., 324, 54 Am. Rep., 805, the Supreme Court of Ohio held that the basis of liability on the part of the railroad is negligence. See, also, 18 Ohio Jurisprudence, 1124, Section 37.

It is strongly urged by defendant that the restiveness on the part of the cows created by the removal of their calves was a contributing factor in causing them to push upon this gate and, therefore, that plaintiffs cannot recover under the theory of contributory negligence.

There is evidence establishing the fact that these cows were restive due to the weaning and taking away of their calves. This, however, is a natural consequence flowing from ordinary agricultural and farming pursuits and certainly one that is to be contemplated by the defendant company in the construction and maintenance of fences and gates. Section 8913, General Code, refers to a fence sufficient to turn stock regardless of any circumstances brought on by the natural and ordinary procedure of removing young from the mother.

In fact, the only case that has been cited to this court involving anywhere near the exact issue presented in this regard holds that evidence that calves of the cows killed were in a pasture on the side of the right of way opposite the gate in question is admis-

sible for the purpose of showing that the gate was opened by the pressure of the cows and not left·open by someone in charge of the farm. In that case the railroad company· contended that evidence concerning the restiveness of the cows due to separation from their calves was inadmissible. The Supreme Court of Iowa held otherwise, thereby indicating that the gate should be of sufficient strength to resist such restiveness. See *Payne* v. *Kansas City, St. J. & C. B. Ry. Co.,* 72 Iowa, 214, 33 N. W., 633.

We are forced to conclude that the gate was insufficient to turn the stock contained within the field along the right of way of the defendant railroad company, and that any restiveness caused by the weaning of the calves was incidental to the purposes for which the statutory provision was enacted and does not in any way excuse this defendant from its failure to construct and maintain a proper gate. There is sufficient evidence to establish the negligence of the defendant railroad company in this respect.

None of the assignments of error being well taken, it follows that the judgment must be affirmed.

*Judgment affirmed.*

· McCurdy, P. J., and Gillen, J., concur.